**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2502-24

BRIAN DELANEY,

    Plaintiff-Appellant,

v.

BRACH EICHLER, LLC,
BRIAN LENKER, ESQ.,
HARALAMPO KASOLAS, ESQ.,

    Defendants-Respondents,

and

WEINER LESNIAK, LLP,
WEINER LAW GROUP, LLP,
and LOUIS KARP, ESQ.,

    Defendants.

_____

        Submitted March 11, 2026 – Decided July 23, 2026

        Before Judges Currier and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3225-19.

Emolo & Collini, attorneys for appellant (John C. Emolo, on the brief).

Riker Danzig LLP, attorneys for respondents (Jeffrey A. Beer, Jr., of counsel and on the brief; Julia C. Mann, on the brief).

PER CURIAM

Plaintiff Brian Delaney appeals from a March 28, 2025, Law Division order granting summary judgment to Brach Eichler, LLC, Brian Lenker, Esq., and Haralampo Kasolas, Esq. ("Brach Eichler") and dismissing his complaint against those defendants. We affirm.

I.

Litigation in this highly-contentious matter began over twelve years ago and has persisted, seemingly without interruption, to the present day. Since all parties are well-acquainted with the facts underlying the numerous lawsuits and appeals, we recount only those relevant to the issues currently before us to place the appellate issues in context.

In January 2011, Delaney exercised an option to become a one-third owner of CC Holding LLC ("CCH"), an entity established in 2005 to purchase and to develop real property in Sparta. After that, CCH had four owners: Delaney with a one-third interest, brothers Owen and Douglas Dykstra each with a one-sixth interest, and Demetrius Prassas with a one-third interest.

Separately, in 2008, Delaney acquired a one-third interest in Cash Cow Sparta Village, LLC ("CCSV"). It was his understanding, later confirmed by Brach Eichler, that his participation and interest in CCSV mirrored his one-third interest in CCH.

The impetus for Delaney's retention of Brach Eichler in 2011 stemmed from Prassas's belief he was not being fairly treated by the Dykstra brothers in various corporate matters concerning CCH. Prassas sought to have Delaney's shareholder interest in CCH and CCSV formally memorialized, so his combined shares would constitute 66% of the ownership, thereby enabling him to block any perceived wrongful corporate actions by the Dykstra brothers, who collectively owned only one-third of the shares.

On June 7, 2011, Delaney retained Brach Eichler to exercise his option in CCH and to ensure his one-third interest in CCSV was reflected in the restated operating agreement. Delaney contends Lenker advised him Delaney's ownership interest in CCSV was covered by his exercise of the option in CCH. Delaney further alleges he made an equity contribution of $240,000 to CCH, which was subsequently attributed as a CCSV contribution based on representations from his partner, Owen Dykstra, who managed the corporate

3

books for both entities. This provided Delaney with a financial interest in CCSV, although he was never a formal member of it.

Although Brach Eichler disagreed, Delaney alleges the firm represented him in the restructuring of the CCH operating agreement from July 2011 to November 2012. Although the restated operating agreement for CCH was signed in 2012, Lenker backdated the agreement to January 2011 to encompass proceeds due to Delaney from the sale of real estate lots by CCSV prior to the signing to protect Delaney's interest.

In April 2013, CCH obtained financing from First Hope Bank ("First Hope"). Brach Eichler represented First Hope in the transaction while the Dykstra brothers, Prassas, and Delaney were represented by other counsel. Before proceeding with the loan, Brach Eichler wrote to the members of CCH to advise them of a possible conflict of interest that could arise if a dispute ever arose after the closing. Brach Eichler stated "[o]ur current and what I understand to be future representation of [First Hope] and our prior representation of [CCH] creates the potential for a conflict of interest should a dispute arise in the course of or following the closing of the loan." Brach Eichler continued to

> confirm that (i) the Borrower and the Guarantors have consented to Brach Eichler's representation of . . .

A-2502-24

[First Hope] in connection with this Loan and (ii) [First Hope] has consented to Brach Eichler's representation of [First Hope] with full knowledge of our prior representation of the Borrower and the Guarantors as well as the payment of the [i]nvoice [due from CCH] from the [l]oan proceeds. Each party understands the potential for conflict between them and by signing this letter, knowingly and voluntarily waives that conflict.

Each party signed the letter.

In 2014, the Dykstra brothers and Prassas expelled Delaney from CCH. Three lawsuits followed in which Brach Eichler represented Prassas (the CCH/CCSV litigation). Delaney substituted counsel several times during this litigation and, importantly, at no time did his attorneys move to disqualify Brach Eicher from their representation of Prassas. During that litigation, Owen Dykstra moved to quash a subpoena seeking certain financial information. In a letter to the court joining that application, Brach Eichler, representing Prassas, noted "Delaney was never a member of [CCSV]."

Delaney settled this litigation. As part of the settlement , Delaney orally confirmed on the record he understood and agreed to the terms of the settlement, including the mutual release of all claims in the suit. Counsel for the parties further clarified the settlement released all claims that were or

could have been brought in the case, but would not affect the parties' ongoing rights or remedies regarding their relationships within CCSV.

Additional litigation followed concerning the enforceability of the settlement. Ultimately, five trial court orders were entered with Brach Eichler continuing to represent Prassas in those proceedings, all without objection from Delaney.

Delaney filed a new lawsuit alleging that Owen Dykstra and Prassas misapplied capital contributions Delaney made to CCH. Brach Eichler represented Prassas in that matter and Delaney moved to disqualify Brach Eichler. The trial court granted that application and Prassas appealed.

We reversed, concluding:

> Delaney waived his right to disqualify [Brach Eichler] from representing [Prassas]. Delaney has been constantly involved in litigation in various forms against Prassas, the Dykstras, and their related business entities regarding essentially the same dispute, and never before moved to disqualify [Brach Eichler]. From all accounts, Delaney is a sophisticated developer who was vigorously represented by competent counsel at all stages of the prior litigation. In this litigation, it is arguable that Delaney continues to rebuff compliance with the settlement agreement between himself and CCH's principals we previously upheld, and now belated attempts to separate [Prassas] from the legal counsel they retained throughout that litigation and others in which Delaney was an adversarial party. To

6

A-2502-24

disqualify [Brach Eichler] at this stage would prejudice [Prassas] strategically and financially[,] as they have relied upon their counsel throughout their various legal skirmishes with Delaney, without his objection.

[Delaney v. Dykstra Associates, Inc., No. A-1953-19 (App. Div. July 9, 2020) (slip op. at 6).]

In additional proceedings concerning the settlement in the CCH/CCSV litigation, a Chancery Division judge denied another application by Delaney to disqualify Brach Eichler from representing Prassas in those proceedings:

In the instant case, the doctrine of waiver is applicable and bars [Delaney]'s contention [Brach Eichler] should be disqualified pursuant to RPC 1.9(a). Even if [Delaney]'s argument has merit, as [Brach Eichler] correctly note[s], [Delaney] had countless opportunities throughout this suit and the [prior litigation] to seek disqualification. [Delaney]'s failure and inaction on the matter constitutes a waiver of this right. [Delaney] cannot now, after the case is essentially over, use the court's resources to file a pointless motion to further delay the conclusion of this action.

Delaney filed another complaint accusing Brach Eichler of legal malpractice and a breach of their fiduciary duty. Substantively, he asserted he was entitled to damages to compensate him for Brach Eichler's negligence following its representation of Prassas against Delaney in the CCH/CCSV

7

litigation, when it made false statements during those proceedings, and when it failed to ensure Delaney's one-third interest in CCSV was properly protected.

Brach Eichler moved for summary judgment. The motion judge granted the application and dismissed the complaint holding Delaney was barred from asserting claims against Brach Eichler based on the alleged conflict of interest. The judge specifically noted Delaney was collaterally estopped from relitigating issues previously decided, including the alleged conflict and his lack of ownership interest in CCSV, both of which were central to the dismissal of his earlier claims. The court also found the statements made by Brach Eichler in its representation of Prassas were protected by the litigation privilege, regardless of their truth or falsity.

On appeal, Delaney argues questions of fact exist regarding Brach Eichler's alleged deviation from the standard of professional care and the damages he suffered, and that the court erred in granting summary judgment by improperly applying the doctrine of collateral estoppel and the litigation privilege. We disagree.

## II.

We review a trial court's decision to grant summary judgment de novo. Christakos v. Boyadjis, 262 N.J. 447, 467 (2026). We consider "whether the

competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023) (internal quotation marks omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (internal quotation marks omitted) (quoting R. 4:46-2(c)).

III.

Both the Chancery Division and this court previously concluded Delaney waived his argument for Brach Eichler's disqualification by failing to seek their disqualification during the CCH/CCSV litigation. Therefore, the trial court properly concluded collateral estoppel barred Delaney's conflict-of-interest argument.

"Collateral estoppel is an equitable remedy that bars re[-]litigation of any issue that was determined in a prior action." In re Borough of Englewood

<u>Cliffs</u>, 473 N.J. Super. 189, 202 (App. Div. 2022).  Collateral estoppel applies when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [<u>Ibid.</u> (internal quotation marks omitted) (quoting <u>Winters v. N. Hudson Reg'l Fire & Rescue</u>, 212 N.J. 67, 85 (2012)).]

"Waiver is the voluntary and intentional relinquishment of a known right."  <u>Knorr v. Smeal</u>, 178 N.J. 169, 177 (2003).  Although a party may abandon a right "by design or indifference[,] . . . [t]he party waiving a known right must do so clearly, unequivocally, and decisively."  <u>Ibid.</u>; <u>see also Cole v. Jersey City Med. Ctr.</u>, 215 N.J. 265, 277 (2003).  "[W]aiver 'presupposes . . . intentional surrender; waiver cannot be predicated on consent given under a mistake of fact.'"  <u>Cnty of Morris v. Fauver</u>, 153 N.J. 80, 104-05 (1998) (quoting <u>W. Jersey Title & Guar. Co. v. Indus. Trust Co.</u>, 27 N.J. 144, 153 (1958)).

Throughout this lengthy litigation, which spanned several years and multiple proceedings, Delaney consistently failed to object to Brach Eichler's

continued involvement with other parties to the litigation. He does not dispute this fact. Delaney explicitly waived any conflict of interest related to the loan and never moved to disqualify Brach Eichler in the CCH/CCSV litigation. Brach Eichler's prior representation in 2011 regarding the same issue was both clear and transparent. Delaney fully litigated the issue of the alleged conflict and his waiver of that right in at least two separate proceedings. Accordingly, collateral estoppel was properly applied, and Brach Eichler was entitled to summary judgment.

## IV.

The trial judge correctly determined the litigation privilege barred adverse scrutiny for the statements made about the ownership interest or lack of it as part of the CCH/CCSV litigation.

Statements "made in the course of judicial, administrative, or legislative proceedings [are] absolutely privileged and wholly immune from liability." Ruberton v. Gabage, 280 N.J. Super. 125, 132 (App. Div. 1995). For this "litigation privilege" to apply, it must be shown the communication was made: "(1) . . . in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

(4) . . . [with] some connection or logical relation to the action." Hawkins v. Harris, 141 N.J. 207, 216 (1995).

There is no dispute the statement contained in the letter to the court for which Delaney seeks to hold Brach Eichler liable was made during the course of judicial proceedings by counsel and in connection with that proceeding and for the objectives of Brach Eichler's client who was adverse to Delaney in the CCH/CCSV litigation. Therefore all four factors were properly found and considered. We conclude the motion judge properly found Brach Eichler's statement was entitled to immunity and supported the grant of summary judgment.

V.

Finally, the trial court correctly granted summary judgment because Delaney failed to prove that he suffered damages—an essential element of his negligence claim.

To prevail on a legal malpractice claim, a plaintiff must establish three elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by the plaintiff." Nieves v. Adolf, 241 N.J. 567, 583 (2020) (quoting McGrogan v. Till, 167 N.J. 414,

425 (2001)). Delaney bears the burden of proving these elements with competent evidence. Morris Properties, Inc. v. Wheeler, 476 N.J. Super. 448, 459 (App. Div. 2013) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)). This burden cannot be satisfied by mere conjecture, surmise, nor suspicion. Sommers v. McKinney, 287 N.J. Super. 1, 20 (App. Div. 1996) (citing 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994)).

In this case, Delaney settled the CCH/CCSV litigation, and the settlement agreement—enforced by the court—specifically and affirmatively resolved all claims brought or that could have been brought in that litigation. This demonstrates that Delaney was compensated for any capital contributions or capital accounts to which he may have been entitled. Since Delaney failed to establish any proof of damages, summary judgment was properly granted.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2502-24